UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | Bankruptcy Case No. 09-11102 |
| ) | |
| LESZEK D. WISZNIEWSKI, ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| VALERIE MERRITT, ) | |
| ) | Adversary Case No. 09-00524 |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| LESZEK D. WISZNIEWSKI, ) | Honorable Susan Pierson Sonderby |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM OPINION

Susan Pierson Sonderby, United States Bankruptcy Judge.

This matter comes before the court on the motion of debtor-defendant Leszek D. Wiszniewski (the "Defendant") to dismiss the amended complaint of plaintiff Valerie Merritt (the "Plaintiff") for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b)).[1] For the reasons set forth below, the motion will be granted.

I. JURISDICTION

---

[1] Although his skeletal motion–a mere seven sentences in length–does not expressly invoke a rule under which the Defendant seeks dismissal, his claims that the Plaintiff "fails to set forth sufficient facts to support her contention[s]" suggest that Rule 12(b)(6) is applicable to the matter at bar. *See* Fed. R. Civ. P. 12(b)(6).

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The proceeding concerns a determination of the dischargeability of a particular debt and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is properly placed in this court pursuant to 28 U.S.C. § 1409(a).

## II. FACTS

On a Rule 12(b)(6) motion to dismiss, the court considers the facts both in the complaint and in any exhibits attached to the complaint. *See* Fed. R. Civ. P. 10(c) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7010); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Those facts are assumed to be true for purposes of the motion, and all reasonable inferences from the facts are drawn in the plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003). The complaint here alleges the following facts.[2]

Prior to filing his chapter 7 bankruptcy petition, the Defendant was a principal and fifty percent shareholder of Brickyard Development & Construction ("Brickyard"), a corporation located in Chicago, Illinois.[3] (Compl. ¶ 6.) In May 2003, the Plaintiff sought an estimate from the Defendant to install tile, tile backsplash, and granite and marble flooring in various rooms in

---

[2] All citations to the record reference facts in the Plaintiff's second amended complaint, filed on December 9, 2009. *See* footnote 10 *infra*.

[3] Throughout her complaint, the Plaintiff seems to refer interchangeably to Brickyard and the Defendant. Only the Defendant, however, is named as a party to the instant adversary. Moreover, Brickyard was involuntarily dissolved by the Illinois Secretary of State on September 3, 2009 (Compl. ¶ 6), and, in any event, a corporation cannot receive a discharge, *see* 11 U.S.C. § 727(a)(1). For all of these reasons, the court will address the allegations in the complaint only as they pertain to the Defendant.

her home. (*Id.* ¶ 7.) After the Plaintiff received an initial estimate for the installation of both flooring and new subflooring, the Defendant told her that a revised, increased estimate was required, because an "upgraded" new subfloor was needed to provide a level surface throughout her house. (*Id.* ¶¶ 8 & 9.)

On May 29, 2003 (and as amended on June 6, 2003), the Plaintiff entered into a contract with Brickyard, through the Defendant, under which Brickyard was to perform the installation work at the Plaintiff's home for a total cost of $7,320.00. (*Id.* ¶ 11 & Ex. A.) The contract provided a one-year labor warranty and expressly stated as follows: "All material guaranteed to be specified. All work to be completed in a professional manner according to standard practices." (*Id.* ¶ 12 & Ex. A.) Prior to the commencement of the work, the Plaintiff tendered a payment to Brickyard representing fifty percent of the total cost, as required under the contract.[4] (*Id.* ¶ 13.)

Shortly after the completion of the work in July 2003, the Plaintiff noticed that the tile flooring installed by Brickyard was cracking and damaged. (*Id.* ¶¶ 14 & 15.) Although she contacted the Defendant several times in order to have the flooring inspected and repaired, neither the Defendant nor Brickyard made any attempt to fix the damage.[5] (*Id.* ¶ 15.)

---

[4] According to the complaint, the Plaintiff made an initial payment of $3,590.00 (Compl. ¶ 13), although fifty percent of the total cost of the project would have required a down payment of $3,660.00 (*see id.*, Ex. A).

[5] Rather than inspecting the work and repairing the damage, the Defendant only offered excuses–and rather bizarre excuses at that–as to why the tile was cracked. Specifically, the Defendant claimed that the Plaintiff's house was "too heavy" for the tile installed, that the tile was defective because the Plaintiff had purchased it on sale, and that the Plaintiff's guests were "too heavy for the floor." (*Id.* ¶¶ 16 & 17.)

Accordingly, the Plaintiff withheld the balance due under the contract.[6] (*Id.* ¶ 18.)

Subsequently, she contacted David McParlane ("McParlane") of Century Tile and Chris Denault of TEC Specialty Products, both of whom visited her home on September 2, 2003 to inspect the work done by Brickyard. (*Id.* ¶¶ 18 & 19.) About two weeks later, on September 18, 2003, McParlane issued a report with the following findings:

(1) The damaged flooring consists of the stone tiles primarily in the kitchen area. (*Id.*, Ex. B.)

(2) The cracking of those tiles was the result of the installation; there were no defects in the tiles themselves.[7] (*Id.* ¶ 19 & Ex. B.)

(3) Rather than a Portland-based cement, which is required by Tile Council of America ("TCA") guidelines, a Liquid Nails® adhesive was used to attach the tiles to the subfloor.[8] (*Id.*)

(4) The cement backer board seams were not treated according to manufacturer and industry guidelines. (*Id.*)

(5) Contrary to TCA guidelines, tiles in several rooms were installed without expansion joints between rooms. (*Id.*)

In addition to the issues identified in McParlane's report, the complaint also alleges that scrap cement blocks left over from previous Brickyard jobs were used in the installation, rather than

---

[6] The complaint alleges that the balance due under the contract was approximately $4,200.00. (Compl. ¶ 18.) That figure, however, does not correspond to the contract attached to the complaint as Exhibit A. According to the contract, the total project cost was $7,320.00. If the Plaintiff tendered a down payment of $3,590.00, the remaining balance would have been $3,730.00–not $4,200.00.

[7] According to the report, the "problems are a result of movement in [the] subfloor which is an installation issue, and not an issue with the tile itself." (*Id.*, Ex. B.)

[8] McParlane's report notes that it was actually the Plaintiff who told him that the Liquid Nails® adhesive was used. (*See id.*)

4

the new, premium-grade subfloor that the Defendant had promised.[9] (Id. ¶¶ 19 & 20.)

The Plaintiff sent McParlane's report to the Defendant, but neither he nor Brickyard took any steps to rectify the problems discussed therein. (See id. ¶¶ 21 & 22.) Rather, on November 20, 2003, Brickyard filed a notice of mechanic's lien against the Plaintiff in the amount of $4,505.00 plus interest. (Id. ¶ 22.)

On November 12, 2008, the Plaintiff filed suit against both Brickyard and the Defendant in the Eighteenth Judicial Circuit in DuPage County, Illinois, seeking both avoidance of the mechanic's lien and recovery of her asserted damages for deception and fraud. (Id. ¶ 25.) The following day, the Defendant was served with process, but he failed to file an answer or to otherwise respond. (Id. ¶¶ 26 & 27.) On May 5, 2009, the Circuit Court entered an order expunging the mechanic's lien and granting a default judgment for the Plaintiff and against Brickyard and the Defendant in the amount of $15,446.09. (Id. ¶ 28 & Ex. C.)

On March 30, 2009, the Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Code"). Subsequently, on June 25, 2009, the Plaintiff, acting pro se, filed an adversary complaint in the bankruptcy, seeking relief under various provisions of the Code. On October 7, 2009, after retaining counsel, the Plaintiff amended her complaint, objecting to the dischargeability of the debt owed to her by the Defendant pursuant to sections 523(a)(2)(A) and (a)(6) of the Code, 11 U.S.C. §§ 523(a)(2)(A), (a)(6). About a month later, on November 4, 2009, the Defendant filed the instant motion to dismiss the first amended

---

[9] The complaint notes that the use of the scrap cement blocks is included in McParlane's report. (Compl. ¶ 19.) The report, however, contains no mention of the scrap blocks, nor does it indicate that the use of such blocks caused variations in the subfloor, as alleged in the complaint. (See id.)

5

complaint. Apparently in response to that motion, the Plaintiff then filed a second amended complaint on December 9, 2009. The court now reviews the Plaintiff's second amended complaint for purposes of the instant motion to dismiss.[10]

### III. DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7008(a)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (finding that the plaintiff must include more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]"). Legal

---

[10] Prior to the filing of the second amended complaint, the Plaintiff, in contravention of the federal rules, obtained neither the Defendant's written consent nor the court's leave to amend her complaint. *See* Fed. R. Civ. P. 15(a)(2) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7015). Accordingly, although the Defendant did not raise the issue, the second amended complaint should not be considered by the court. *See, e.g., BancFlorida v. De Pasquale (In re De Pasquale)*, 166 B.R. 663, 672 (Bankr. N.D. Ill. 1994).

Pursuant to Rule 15(a)(2), however, courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, barring any unusual circumstances, the court would have granted the Plaintiff's motion to amend, had such a motion been filed. Moreover, despite the fact that the Plaintiff failed to follow the federal rules, the Defendant's motion to dismiss was fully briefed following the filing of the Plaintiff's second amended complaint. Both the response and reply appear to generally address this most recent version of the complaint, and neither pleading acknowledges or differentiates between the first and second amended documents. Finally, considering the second amended complaint rather than the first will not alter the outcome in this matter. For all of these reasons, the court will review the second amended complaint for purposes of the Defendant's motion, and the facts as recited above come from that version of the document.